IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ONTIVERAS,<br><br>      Petitioner,<br><br>      vs.<br><br>DIRECTOR OF CORRECTIONS, et al.,<br><br>      Respondents.<br>_____/ | No. CIV S-04-1141-GEB-CMK-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

        Petitioner, a state prisoner proceeding with appointed counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole. Pending before the court are petitioner's pro se petition for a writ of habeas corpus (Doc. 1), transferred to this court from the Northern District of California on June 15, 2004, respondent's answer (Doc. 14), filed on November 4, 2004, and petitioner's pro se reply (Doc. 16), filed on December 23, 2004. On August 29, 2006, the court appointed counsel in light of <u>Sass v. Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006), which was pending in the Ninth Circuit at the time. The parties have declined the court's invitation to file supplemental briefing addressing the impact of <u>Sass</u> on this case.

# I. BACKGROUND

Petitioner was convicted of first degree murder on January 25, 1984, and sentenced to an indeterminate life sentence.  In 1987 petitioner was convicted of possessing a concealed weapon in prison.  On May 29, 2001, petitioner, who was represented by counsel, appeared before the Board of Prison Terms ("Board") for his first parole suitability hearing.  After considering the facts of petitioner's commitment offense, as well as a letter from an Alameda County deputy district attorney, petitioner's social and prison history, petitioner's parole plans, and a correctional counselor's Life Prisoner Evaluation prepared for the hearing, the Board found petitioner unsuitable for parole.

Reciting the Life Prisoner Evaluation prepared for the hearing, the Board relied on the following facts of petitioner's commitment offense:

> . . . On 4/4/83 at about 2:00 p.m., Ontiveras purchased an automobile tape deck from the victim, Carl Moore. . . .  When he installed it into the automobile, it did not work.  Later that same afternoon, Ontiveras drove to the victim's residence to exchange the tape deck for his money.  He was accompanied by three friends, Ricky Torres, . . . Joseph Gonzales, . . . and Richard Trigo. [¶] . . They were unable to locate Mr. Moore and drove off until about midnight, when they returned.  Ontiveras tried to get Mr. Moore to accompany him back to his home to exchange the tape deck and money. . . .  Mr. Moore refused, so Ontiveras had Ricky Torres and Joseph Gonzales stayed with Mr. Moore until he returned with the tape deck.  Upon his return, both Torres and Gonzales entered the car and watched Mr. Moore approach the car.  Mr. Moore handed Ontiveras some money and Ontiveras held out the tape deck to Mr. Moore.  As Mr. Moore reached out for the tape deck, Ontiveras jerked it away from him and pulled out a .45 caliber pistol.  Ontiveras ordered the victim to step away from the car.  As the victim complied, Ontiveras shot him in the head.  The next day, Ontiveras bragged . . . that he had shot a man in the head.

In his pro se traverse, petitioner states: "In [petitioner's] version, he did not deliberately shoot Moore but had held the gun out of the car in the air and fired backwards, not thinking he would actually hit victim Moore."

/ / /

/ / /

2

In the parole suitability hearing decision, the Board discussed these facts as follows:

> . . . We arrived at these conclusions based on the fact that the offense was carried out in an especially cruel and callous manner. That the offense was carried out in a dispassionate and calculated manner and that the offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering. The motive for the crime is inexplicable or very trivial in relation to the offense.

The Board also noted that petitioner had committed a criminal offense while incarcerated. In addition, the Board noted petitioner's prison history:

> . . . The prisoner has programmed in a limited manner while incarcerated and has failed to [show] evidence of positive change and misconduct while incarcerated includes 24 . . . disciplinary reports. The last one, however, was nearly – was 12 years ago. . . .When you come back for your next hearing, I'm certain you'll be able to maintain your record and – [¶] – be disciplinary-free and not having those haunting you nearly as bad. They certainly do.

As to petitioner's plans on parole, the Board noted that he did not have any employment plans. Finally, the Board considered petitioner's social history, noting that petitioner dropped out of school and had been involved with drugs and gangs.

Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court challenging the May 29, 2001, denial of parole. That petition was denied on May 19, 2004, without comment or citation. Respondents admit that petitioner's claim is exhausted.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court

denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state

court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal

habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

## III. DISCUSSION

Petitioner states that "distilled to their essence, . . . Petitioner's pro se claims are: (1) the Board had no relevant or reliable evidence upon which to base denial of parole at his initial hearing; and (2) the Board's actions and decisions were arbitrary and capricious in that it failed to act in accord with all applicable legal and constitutional principles governing their quasi-judicial and administrative functions." Respondents argue first that this court does not have jurisdiction because there is no liberty interest in parole. Respondents also argue that petitioner received all the constitutional protection he was due because clearly established federal law only requires that he be given notice and an opportunity to be heard, which petitioner was. Finally, respondents argue that, if petitioner's claim is constitutionally cognizable, and if the "some evidence" due process standard applies, the state court's denial of habeas relief was neither an "unreasonable application of" nor "contrary to" federal law because the Board's decision was supported by some evidence.

/ / /

/ / /

Many of the legal questions presented by this case have recently been addressed by the Ninth Circuit in <u>Sass v. Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006). In particular, the Ninth Circuit held that California's parole statute does, in fact, create a federally cognizable liberty interest. <u>See id.</u> at 1127-28. On the merits, the court also rejected the argument that the "some evidence" standard does not apply. <u>See id.</u> at 1128-29. Under <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985), due process requires a prison disciplinary hearing decision be based on "some evidence" in the record as a whole which supports the decision. This standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." <u>Id.</u> at 455-56. In <u>Sass</u>, the Ninth Circuit also addressed the argument that the requirement of "some evidence" in the parole context has not been clearly established by the Supreme Court. The Ninth Circuit held:

> <u>Hill</u>'s some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted). <u>Hill</u> held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted). To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

<u>Sass</u>, 461 F.3d at 1129.

Therefore, this court has jurisdiction to review petitioner's claim and must apply the "some evidence" standard on the merits. <u>See id.</u>

In assessing whether the "some evidence" standard has been met, the court's analysis is framed by the state's statutes and regulations governing parole suitability. <u>See Biggs v. Terhune</u>, 334 F.3d 910, 915 (9th Cir. 2003). Thus, this court looks to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole and then reviews the record to determine whether there is "some evidence" supporting the decision to

7

deny parole.  Under California law, an inmate is not suitable for parole if, in the judgment of the Board, the prisoner will pose an unreasonable risk of danger to society if released.  See Cal. Code Regs., tit. 15 § 2402(a).  The regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability.  See Cal. Code Regs., tit 15 § 2402(c)-(d).  Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release.  See Cal. Code Regs., tit. 15 § 2402(d).  The denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present a danger to society if released.  See In re Dannenberg, 34 Cal.4th 1061, 1071 (2005).

        The gravamen of petitioner's claim is that immutable factors cannot constitute evidence sufficient to deny parole and that continued reliance on such factors ignores the goal of rehabilitation and violates due process.  In Biggs, where the petitioner was challenging the first denial of parole based solely on the facts of the commitment offense, the Ninth Circuit concluded that the denial was based on some evidence.  In dicta, however, the court acknowledged that, sometime in the future, the continued reliance on immutable factors could violate due process.  See Biggs, 334 F.3d at 917.  From this, it is clear that the Board may rely solely on immutable factors for the first denial of parole.

        As to subsequent denials of parole and the continued reliance on immutable

factors, the Ninth Circuit has not drawn any bright line. In <u>Sass</u>, where the petitioner was challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition. <u>See</u> <u>Sass</u>, 461 F.3d at 1129. The court did not conclude that reliance on immutable factors (the facts of the commitment offense and the petitioner's prior criminal history) – even for a third time – violated due process. <u>See id.</u> The court held:

> In making a judgment call based on evidence of pre-conviction recidivism and the nature of the conviction offense, the Board cannot be categorized as acting arbitrarily. Here, the Board based its finding that Sass was unsuitable for parole on the gravity of his convicted offenses in combination with his prior offenses. These elements amount to some evidence. . . . Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Recently, in <u>Irons v. Carey</u>, ___ F.3d ___ (9th Cir. 2007), the Ninth Circuit reversed the district court's grant of a habeas petition challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment offense alone constituted some evidence of unsuitability under California law. As to the due process argument, the court noted in dicta:

> Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

Thus, reliance on immutable factors for the eighth denial of parole does not violate due process.

As petitioner admits, the Board in his case considered not only the facts of his commitment offense – which are certainly immutable – but also: (1) an objection from the Alameda County District Attorney's office; (2) the Life Prisoner Evaluation; (3) petitioner's adverse prison history; (4) petitioner's unstable social history; and (5) petitioner's lack of adequate parole plans. Under California law, these are the circumstances which indicate whether

an inmate is suitable for parole.  On this record, this court concludes that "some evidence" supported the Board's finding.  In fact, under <u>Sass</u> and <u>Biggs</u> reliance solely on the facts of the commitment offense would have satisfied this standard.  Certainly, the Board's reliance in this case on more than just the facts of the commitment offense must also satisfy the "some evidence" standard.

While the court shares the Ninth Circuit's concern that, at some point, continued reliance on the same immutable facts to deny parole over and over might violate due process, speculation as to what may or may not happen in the future cannot serve as a basis to grant the instant petition.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied and the Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 14, 2007.

*/s/ Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE